Juan Santiago, demandante y apelado, *v.* Chester Krol y The Porto Rican and American Insurance Company, demandados y apelante la segunda.

Núms. 9785, 9788–91.—*Sometidos:* Febrero 11, 1949. *Resueltos:* Abril 11, 1949.

*Córdova & González* y *Alberto Picó*, abogados de la apelante; *José Veray, Jr.*, abogado de los apelados; *Héctor Reichard* abogado del codemandado Krol.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Se trata de cinco demandas de daños y perjuicios presentadas por Juan Santiago y cuatro personas más[1] contra Chester Krol y The Porto Rican and American Insurance Company, como su aseguradora, alegándose en ellas que debido a la negligencia del codemandado Chester Krol al conducir su automóvil el 26 de abril de 1946 en la carretera que conduce a Quebradillas, ocasionó daños a los demandantes.

La codemandada The Porto Rican and American Ins. Co. contestó las demandas negando ser responsable de los daños causados por Krol debido a que éste, en los momentos de ocurrir el accidente, no estaba autorizado por ley para manejar vehículos de motor en las carreteras de Puerto Rico y también que al conducir el mismo lo hacía en estado de embriaguez, violando así la cláusula núm. III de la póliza de seguro que disponía:

"III—Esta póliza no cubre . . . (4) mientras el Automóvil o los Automóviles citados estén . . . (d) manejándose por cualquier persona embriagada, o (e) manejándose por persona no debidamente autorizada por Ley."

El demandado Krol en su contestación negó todos los hechos esenciales de las demandas.

[1] Por estipulación de las partes, los cinco casos fueron vistos conjuntamente en la corte inferior y la transcripción de evidencia, común a todos los casos ha sido presentada a este Tribunal en el expediente del presente caso.

En el acto del juicio la Porto Rican and American Ins. Co. no asumió la representación del codemandado Krol y compareció a los únicos efectos de probar que no era responsable bajo la póliza expedida, aceptando las partes como ciertos los siguientes hechos:

(1) Que la póliza de seguro contenía una cláusula excluyendo accidentes en que el vehículo estuviera manejado por persona no autorizada por ley.

(2) Que Chester Krol tenía una licencia para manejar vehículos de motor en el estado de Illinois, pero que la misma expiró en mayo 1°. de 1942.

(3) Que Chester Krol para la fecha del accidente no estaba autorizado para manejar vehículos de motor por las carreteras de Puerto Rico.

(4) Que el accidente ocurrió en una carretera pública de Puerto Rico.

(5) Que la Porto Rican and American Insurance Company no se enteró de que Chester Krol no tuviera licencia para conducir automóviles en Puerto Rico hasta después de ocurrido el accidente, y que procedió entonces a devolverle las primas pagadas por él, las cuales éste no aceptó.

Presentadas las pruebas de los demandantes y de los dedemandados, la corte dictó sentencia condenando a los demandados, Chester Krol y The Porto Rican and American Ins. Co. a pagar diversas cantidades de dinero, más honorarios de abogados, por los daños ocasionados a los cinco demandantes.

No conforme la Porto Rican and American Ins. Co. con la sentencia dictada interpuso recurso de apelación en los cinco casos. El codemandado Chester Krol no apeló.

Por su primer señalamiento sostiene la apelante que erró la corte inferior al resolver que la Compañía era responsable en este caso a pesar de que el asegurado Chester Krol no estaba autorizado por ley para conducir vehículos de motor en Puerto Rico.

En el contrato de seguro la Porto Rican and American Ins. Co., en la sec. III, supra, estipuló las condiciones que la relevarían de responsabilidad y el asegurado las aceptó. Una de esas condiciones era al efecto de que el automóvil tenía que estar manejado por una persona debidamente autorizada por ley. De la estipulación de los hechos, admitidos como ciertos por las partes durante el juicio, aparece que el asegurado Chester Krol, en los momentos de ocurrir el accidente, no estaba autorizado por ley para conducir su automóvil por las carreteras de Puerto Rico, violando así la mencionada condición del contrato de seguro.

La regla general es que la ausencia de una condición de esta naturaleza en la póliza de seguro no impide que la compañía aseguradora sea responsable, pero cuando tal condición existe, la compañía no responde de los daños causados. 6, Blashfield, *Cyclopedia of Automobile Law and Practice*, *Part I*, sec. 3947, págs. 634-637 (*Permanent Edition*), donde se dice, a la pág. 636:

". . . Tal condición no es contraria a la política pública, irrazonable o nula, y bajo ella no puede recobrarse cuando el accidente ocurrió mientras el vehículo estaba siendo guiado por un conductor sin licencia, aun cuando la violación de dicha condición no fuera la causa próxima del accidente y aun cuando la ley requiriendo una licencia entrara en vigor después de haberse expedido la póliza."

Y además:

". . . no hay responsabilidad cuando la licencia del conductor ha expirado a pesar de que la violación hubiera aumentado el peligro."

En el caso de *Giacomo* v. *State Farm Mut. Automobile Ins. Co.*, 280 N.W. 653 (Minn., 1938), bajo una póliza que contenía una cláusula similar a la del presente caso, se resolvió que la póliza no cubría el accidente porque ocurrió mientras el automóvil era operado por una persona que no tenía licencia. Se dijo, a la pág. 655:

". . . La póliza de seguro define lo que cubre (*coverage*). Excepto en cuanto estén limitadas por ley, las partes están en libertad

de convenir sobre aquellos términos que ellas quieran. No hay restricciones estatutarias que impidan a las partes en convenir en una cláusula de exclusión como la que aquí tenemos. Los riesgos asumidos pueden definirse por términos tanto de inclusión como de exclusión. . . .''

Y a la pág. 656:

''* * * * * * *

''Ninguna relación causal entre el accidente y el hecho de que el conductor no tuviera licencia tiene que ser demostrada. La exclusión está basada en un contrato, el cual excluye este riesgo sin tomar en consideración la relación causal. Cuando, como aquí, la póliza por sus términos excluye un riesgo del seguro, no es necesario, para que la exclusión sea efectiva, demostrar que hubo relación causal entre el daño y el riesgo excluído. [Citas.] . . . Sostener que la exclusión opera únicamente cuando existe relación causal entre el accidente y el motivo de exclusión, sería en efecto hacer que la póliza cubriera un riesgo excluído y entonces excluirlo únicamente cuando la relación causal es demostrada. Esto sería extender la póliza al incluir un riesgo que las partes mismas excluyeron. . . .''

Y por último, a la pág. 657:

''* * * * * * *

''No hay razón para sostener que la exclusión sea irrazonable y nula. Idénticas o similares cláusulas de exclusión han sido sostenidas en los casos que hemos citado. La cláusula de exclusión niega cubierta al manejar un automóvil en forma prohibida por la ley. La póliza meramente adoptó una distinción que existía en las leyes. La legislatura por ley declara la política pública del estado. Toda vez que la cláusula de exclusión coincide con prohibiciones estatutarias sobre la manera de manejar un vehículo, no podemos decir que sea contraria a la política pública o en otra forma irrazonable. [Citas.] Por el contrario, al excluir de la cubierta de la póliza a aquéllos que el estatuto excluye del derecho a guiar, podría argüirse que la cubierta del seguro está de acuerdo con la política pública del estado.''

Al mismo efecto que la anterior interpretación sosteniendo la validez de cláusulas de esta naturaleza, véanse *State Farm Mutual Ins. Co.* v. *Belshe,* 112 S.W.2d 954 (Ark. 1938); *State Farm Ins. Co.* v. *Coughram,* 303 U.S. 485 (1938);

*Holland Supply Corp.* v. *State Farm Mut. A. Ins. Co.,* 186
S.E. 56 (Va., 1936); *Culley* v. *Farm Bureau Mut. Ins. Co.,*
69 N.E.2d 19 (Ind., 1946); *Zabonick* v. *Ralston,* 261 N.W.
316 (Mich., 1935); *Crahan* v. *Automobile Underwriters,* 176
A. 817 (Pa., 1935); *Standard Auto Ins. Ass'n.* v. *Neal,* 251
S.W. 966 (Ky., 1923); *Mondou* v. *Lincoln Mut. Casualty Co.*
278 N.W. 94 (Mich., 1938); *Universal Indemnity Ins. Co.* v.
*North Shore D. Co.,* 100 F.2d 618 (C.C.A. 7, 1938).

██ Sostuvo además la corte inferior que la compañía
tenía medios de cerciorarse al expedir la póliza si el asegu-
rado tenía o no licencia para conducir vehículos de motor
en Puerto Rico, y que, al no hacer tal investigación, renun-
ció a la cláusula de exclusión o estaba impedida de alegar
la violación de la póliza. No tiene razón. No hubo tal renun-
cia (*waiver*) ni cabe aplicar la doctrina de un impedimento
(*estoppel*). La póliza constituye un contrato entre las par-
tes. La aseguradora limitó su responsabilidad exigiendo que
el vehículo, en caso de accidente, estuviera manejado por per-
sona autorizada por ley. El asegurado aceptó dicha con-
dición. La compañía no tenía que investigar si el asegurado
o cualquiera otra persona que manejara el vehículo tenía una
licencia. Podía descansar en la presunción de que el asegu-
rado cumplía con las condiciones a él impuestas en la póliza.

En el caso de *Zabonick* v. *Ralston,* supra, sometido por
estipulación, se estipuló que:

". . . al recibir la notificación de los pleitos por el demandado ase-
gurador, . . . inmediatamente instruyó al demandado principal que
no se haría responsable del resultado de ningún pleito como conse-
cuencia de la colisión, debido a que el conductor asegurado no tenía
licencia para guiar. . ."

Se estipuló además:

"* * * * * * *

" 'Que el demandado principal, Wayne Ralston, tenía una licen-
cia de conductor que venció como seis meses antes de la colisión,
y que . . . dos días antes del accidente, dicho demandado tuvo una
discusión con el vendedor y cobrador del demandado asegurador y

éste convino en conseguir una solicitud para renovar [la licencia] . . .
y enviarla al demandado. . .' '' [Se copió entonces parte de la conversación habida.]

No obstante estos hechos, la corte resolvió:

"\* \* \* \* \* \* \*

"Hemos considerado la contención del demandante sobre renuncia (*waiver*). El testimonio citado en la estipulación de hechos no constituye ni una renuncia ni un impedimento (*estoppel*)."

La cita que hace la corte sentenciadora de 6 Blashfield. Ob. cit., sec. 3621, lo que sostiene es que cuando la compañía aseguradora o su agente tiene conocimiento de hechos que invalidan la póliza cuando ésta se expidió, se presume que ha renunciado a las restricciones de la póliza sobre dichos hechos. Empero, en esa misma sección se dice:

"\* \* \* \* \* \* \*

"No es suficiente para atribuir conocimiento a la aseguradora de ciertos hechos . . . que ella o su agente pudieron haber obtenido la necesaria información examinando los records públicos; el conocimiento constructivo que dicho medio concede no es el contemplado dentro de la regla anterior."

No incumbía a la compañía aseguradora en este caso investigar antes, en el momento y después de firmarse la póliza, si el asegurado había cumplido con la ley de no guiar un vehículo de motor por las carreteras de Puerto Rico a menos que estuviera autorizado para hacerlo. Nada hay en la prueba que tienda a demostrar que la compañía o su agente tuvieran conocimiento de que Krol no tenía licencia al otorgarse el contrato de seguro. Correspondía a éste cumplir con dicha condición. El hecho de que en años anteriores hubiera estado autorizado para conducir un vehículo en el estado de Illinois, no cumplía con las condiciones de la póliza. *Universal Indemnity Ins. Co.* v. *North Shore D. Co.*, supra; *Flannagan* v. *Provident Life & Accident Ins. Co.*, 22 F.2d 136 (C.C.A. 4, 1927). Tampoco el hecho de que estuviera auto-

rizado a hacerlo dentro de la zona militar pues el accidente ocurrió en una carretera pública.

 Tampoco tiene fuerza legal alguna la presunción que expresó la corte de que Krol "era un chófer experto en el manejo de vehículos de motor", ni es de aplicación lo resuelto en el caso de *Pueblo* v. *Pereira,* 49 D.P.R. 891, en cuanto a que el no tener licencia un conductor no implica, necesariamente, negligencia que conlleve responsabilidad por un accidente, ya que debe existir la relación causal. Aquí se trata de la violación de los términos de un contrato y la relación causal entre el daño y la alegada negligencia, no tiene nada que ver en el caso. *Giacomo* v. *State Farm Mut. Automobile Ins. Co.,* supra; *State Farm Mutual Ins. Co.* v. *Belshe,* supra; *Cf. Travelers Assn.* v. *Prinsen,* 291 U.S. 576 (C.C.A. 10, 1934).

No habiendo cumplido el asegurado con las condiciones de la póliza que a él incumbía cumplir, la aseguradora no es responsable, aun cuando ésta se enterara de la violación del contrato después de ocurrido el accidente, *Santoni* v. *Porto Rican & American Ins. Co.,* 43 D.P.R. 431, y por tanto, erró[2] la corte al declarar con lugar las demandas en estos casos en tanto en cuanto a la compañía aseguradora se refiere.

*Deben revocarse las sentencias y declararse sin lugar las demandas en cuanto afectan a la codemandada The Porto Rican and American Insurance Company.*

El Juez Presidente Sr. De Jesús no intervino.

---

[2] Habiéndose cometido el primer error señalado, es innecesario considerar si la corte erró o no al resolver que Krol no estaba embriagado en el momento de ocurrir el accidente.